UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
_____
Grace Disarno,

               Plaintiff,               09-CV-64

                  v.                       **DECISION**
                                                     **and ORDER**
Michael J. Astrue,
Commissioner of Social Security

               Defendant.
_____
_____

## Introduction

    Plaintiff Grace Disarno ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner") improperly denied her application for Disability Insurance Benefits ("DIB"). Specifically, Plaintiff alleges that the decision of Administrative Law Judge Marilyn D. Zahm ("ALJ") was not supported by substantial evidence in the record.

    The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"), on the grounds that the ALJ's decision was supported by substantial evidence. For the reasons set forth herein, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law, and therefore, I grant the Commissioner's motion for judgment on the pleadings.

## Background

On August 5, 2003, Plaintiff filed an application for DIB claiming that she became disabled on December 21, 2001, as a result of a motor vehicle accident. (Tr. 74-77). Plaintiff claims that she suffers from severe neck and back pain, degenerative disc disease, and depression. (Plaintiff's Complaint). Plaintiff's application was denied by the Social Security Administration. (Tr. 22-26).

Thereafter, Plaintiff and her representative appeared at an administrative hearing before the ALJ on September 12, 2005. (Tr. 505-36). The ALJ issued an unfavorable decision on August 28, 2006.(Tr. 18-31). The Social Security Appeals Council denied Plaintiff's request for review on May 12, 2006. (Tr. 8-11). Plaintiff appealed to the United States District Court for the Western District of New York, and on May 2, 2008, the Honorable John T. Curtin remanded the case for further proceedings to consider evidence from treating orthopedic surgeon, Dr. William Capicotto. (Tr. 558-70).

A second hearing before the ALJ was held on September 23, 2008, at which Plaintiff and her representative appeared. (Tr. 689-95). By decision dated October 14, 2008, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. 543-57). The ALJ's decision became the final decision of the Commissioner when the Appeals Council declined to assume jurisdiction on November 17,

2008 (Tr. 537-40). On January 20, 2009, Plaintiff timely filed this action. (Plaintiff's Complaint).

## Discussion

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for

judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).

## II. **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record**

The ALJ in her decision found that the Plaintiff was not disabled within the meaning of the Act from the alleged onset date of December 21,2001, through her date last insured of December 31, 2001. (Tr. 549). In doing so, the ALJ followed the Social Security Administration's five-step sequential analysis. See 20 C.F.R. § 404.1520.[1]

Under step one of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time during the relevant period. (Tr. 549). Plaintiff had two jobs in 2003, but they ended within six months due to Plaintiff's illness. Id. The ALJ found that these periods of work activity represented unsuccessful work attempts. Id. See 20 C.F.R. § 404.1574. At step two, the ALJ

---

[1] Five step analysis includes: (1)the ALJ considers whether claimant is currently engaged in substantial gainful activity; (2) if not, the ALJ considers whether claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if claimant suffers such impairment, the third inquiry is whether, based solely on medical evidence, claimant has an impairment which is listed in regulations Appendix 1, and if so claimant will be considered disabled without considering vocational factors (4) if claimant does not have a listed impairment, the fourth inquiry is whether, despite claimant's severe impairment, he has residual functional capacity to perform his past work; and (5) if claimant is unable to perform past work, the ALJ determines whether claimant could perform other work. See id.

4

concluded that Plaintiff's neck and back disorder were severe within the meaning of the Social Security Regulations and had more than a minimal impact on her ability to work. (Tr. 549-50). At step three, the ALJ determined that Plaintiff's neck and back disorder were not severe enough to meet or equal singly or in combination, any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

Further, at the fourth step, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work. See 20 C.F.R. §416.967(b). The ALJ found that Plaintiff could perform her past relevant work as a counter clerk. (Tr. 556-57).

Based on the entire record, including medical evidence, the ALJ properly found that Plaintiff could perform her past relevant work. Therefore, I find that there is substantial evidence in the record to support the ALJ's finding that Plaintiff was not disabled within the meaning of the Social Security Act.

## A. Medical evidence in the record supports the ALJ's determination that Plaintiff was not disabled

On December 22, 2001, Plaintiff was examined in the emergency department of the Mercy Ambulatory Care Center, following a motor vehicle accident the day before. (Tr. 418-23). Plaintiff was diagnosed with musculoskeletal back, neck, and left shoulder pain, and discharged with prescriptions for pain medication. Id.

On December 26, 2001, Plaintiff saw family practitioner Dr. Eric Goodwin. (Tr. 424). Dr. Goodwin noted no motor or sensory loss, and a moderately reduced range of motion. Id. Plaintiff did not report

5

any head injury or loss of consciousness from the accident. Id. He diagnosed back sprain and contusion, and prescribed physical therapy and the application of heat and ice. Id.

On February 25, 2002, treating specialist Dr. Kenneth Lall reported normal neurological findings. (Tr. 413). He assessed the Plaintiff with cervical radiculopathy and possible cervical canal stenosis. Id. The doctor referred Plaintiff for a nerve conduction study of her left upper extremity, which yielded normal results.(Tr. 415-17).

The ALJ found that Plaintiff provided no evidence pertinent to the relevant period between the date of her injury on December 21, 2001, and her last date insured on December 31, 2001 to establish disability. (Defendant's Reply Memorandum "Df. Reply Mem" 1-3). To be eligible for DIB, Plaintiff must establish that her disability commenced on or before the date her insured status expired. 42 U.S.C. §§ 423(a)(1)(A) and (c)(1); 20 C.F.R. § 404.131. The Commissioner argues that the two medical reports for treatment during the ten-day period following Plaintiff's injury in which she retained insured status fail to establish disability. (Df. Reply Mem 1-3; Defendant's Memorandum of Law "Df. Mem" 3-4, 18-19). However, "Evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments which could reasonably presumed to have been present" during the relevant period.

6

Pollard v. Halter, 377 F.3d 183, 194 (2d Cir. 2004)(citing Lisa v. Secretary of Dep't of Health and Human Serv., 940 F.2d 40, 44 (2d Cir.1991)). Further, it is possible that a retrospective diagnosis may shed considerable light on the seriousness of a Plaintiff's condition during the relevant period. See Tirado v. Brown, 842 F.2d 595, 597 (2d Cir. 1988).

The ALJ found that evidence in the record indicated that Plaintiff's condition immediately following the injury was not as severe as it was in July 2003. (Tr. 550). During the period following her alleged onset date to some point in mid to late 2003, Plaintiff received only chiropractic care for her injury. (Tr. 555). She was treated by Chiropractor Joseph F. Biasillo D.C. noted that Plaintiff was making progress on November 11, 2002, and that her visits had been reduced to one to two times a week. (Tr. 347). Further, the ALJ noted that Dr. Lall prescribed very little pain medication after the first couple of months following Plaintiff's injury. (Tr. 555).

The ALJ found that Plaintiff experienced only sporadic depression during the relevant period, and that her symptoms cleared up quickly with medications and did not last 12 months at a severe level. (Tr. 555).

The ALJ determined that the totality of medical evidence failed to indicate that Plaintiff was disabled. (Tr. 552-56). I find that there was substantial evidence on which the ALJ could base her

7

determination that Plaintiff's condition was not disabling within the meaning of the Act during the relevant period.

**<u>1. The ALJ properly weighed the medical evidence in determining that Plaintiff was not disabled</u>**

Plaintiff contends that the ALJ did not grant proper weight to the opinions of various medical sources in the record. (Plaintiff's Memorandum of Law "Pl. Mem" 14-23).

Social Security Regulations provide that a treating physician's opinion on the nature and severity of a claimant's symptoms is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). The factors that an ALJ must consider when a treating physician's opinion is not given controlling weight include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." <u>Schaal v. Apfel</u>, 134 F.3d 496, 503 (2d Cir. 1998) (citing §§ 404.1527(d)(2) and 416.927(d)(2)).

The ALJ granted some weight to the opinion of primary care physician Dr. Goodwin. (Tr. 555). She properly noted that Dr. Goodwin was not entitled to controlling weight, because he was a general practitioner and not a back or neck specialist. <u>Id.</u> Similarly, the

8

ALJ granted some weight to Dr. Lall's physical examination and findings. Id.

## 2. The ALJ properly granted no weight to Dr. Capicotto's opinion that Plaintiff was totally disabled

Orthopedic surgeon, Dr. Capicotto first examined Plaintiff on July 17, 2003, more than a year and a half after her injury, in connection with her Workers' Compensation claim. (Tr. 198-200, 325-27). On March 5, 2004, Dr. Capicotto performed an anterior cervical discectomy and fusion at the C3-4 and C4-5 levels. (Tr. 300-09). Treatment notes stated that Plaintiff was "totally disabled" and her condition was "100% related to the 12/21/01 motor vehicle crash." (Tr. 295). On February 11, 2005, Dr. Capicotto performed a lumbar laminectomy and discectomy, and fusion at the L5-S1 level. (T. 253-54, 279-79, 364-67).

The District Court initially remanded Plaintiff's case on May 2, 2008 for purposes of determining the appropriate weight to be given to Dr. Capicotto's opinion. (Tr. 558-70). Dr. Capicotto refused to respond to the ALJ's June 3, 2008 request for an explanation of the basis for his statements that Plaintiff was disabled, along with information relating to her functional abilities. (Tr. 546, 550, 555-56).

The ALJ assigned no value to Dr. Capicotto's opinion, because he failed to define "totally disabled" or indicate the time period during which his statements applied. (Tr. 555-56). An ALJ must establish "good reasons" for the weight assigned to a treating

9

physician's opinion. 20 C.F.R. § 404.1527(d)(2). Plaintiff argues that the ALJ should have granted more weight to Dr. Capicotto's opinion, and failed to provide "good reasons" for discounting it. (Pl. Mem 17-19).

The determination of whether a Plaintiff meets the statutory definition of disabled under the Act is reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e)(1), § 416.927(e)(1). "A treating physician's statement that the claimant is disabled cannot itself be determinative." Snell v. Apfel, 177 F.3d 128, 133 (2d. Cir. 1999). This is particularly true when statements of disability are made in the context of Worker's Compensation Claim. See Gray v. Chater, 903 F. Supp 293, 299-301 (N.D.N.Y. 1995); Rosado v. Shalala, 868 F. Supp 471, 473 (E.D.N.Y. 1994).

Dr. Capicotto's report provided no specific findings regarding Plaintiff's exertional and non-exertional limitations. (Tr. 555). Further, his initial examination was done in connection with Plaintiff's Workers' Compensation claim. Id. Therefore, the ALJ properly concluded that his statement that Plaintiff was "total disabled" was a conclusion of law reserved to the Commissioner.

The ALJ concluded that Dr. Capicotto's refusal to provide an objective basis for his conclusory statements and the fact that he did not meet Plaintiff until 18 months after the expiration of her date last insured rendered his opinion "of little practical significance."

(Tr. 555-56). I find that the ALJ sufficiently articulated "good reasons" for discounting Dr. Capicotto's opinion.

### i. The ALJ had no additional duty to re-contact Plaintiff's treating physicians

Plaintiff further argues that the ALJ erred in failing to re-contact Dr. Capicotto and Dr. Goodwin. (Pl. Mem 13-17). Plaintiff contends that the ALJ failed to fulfill her duty to fully develop the administrative record. Id.

The ALJ is obligated to develop Plaintiff's complete medical history for at least the twelve months preceding the month in which Plaintiff filed her application. 20 C.F.R. § 404.1512(d). The ALJ is required to obtain additional evidence only if he or she cannot decide whether a claimant is disabled based on the existing evidence. 20 C.F.R. § 404.1527(c). "Where there are no obvious gaps in the administrative record and the ALJ already possesses a 'complete medical history,'" the ALJ is under no obligation to re-contact a physician. Rosa v. Callahan, 168 F.3d 72, 79, n. 5 (2d Cir. 1999).

Here, there were no apparent gaps in either Dr. Goodwin or Dr. Capicotto's medical reports. (Tr. 555-56). In his January 28, 2003 report, Dr. Goodwin wrote "no work til return evaluation in 2 months." (Tr. 438). The ALJ relied on the limitations indicated in Dr. Goodwin's other treatment notes to determine that Plaintiff retained the ability to perform light work. (Tr. 555). Thus, it was not necessary for the ALJ to re-contact Dr. Goodwin for information regarding the report at issue. The ALJ properly assigned some weight

11

to Dr. Goodwin's assessment since he was only claimant's primary care doctor who did not give any specialized treatment for plaintiff's musculoskeletal impairments beyond prescribing medications on occasions. (Tr. 155.)

Further, an ALJ has no obligation to re-contact a treating source for clarifying information where the ALJ knows from past experience that the source either cannot or will not provide the necessary findings. 20 C.F.R. § 404.1512(e)(2).

Dr. Capicotto refused to comply with the ALJ's multiple requests to provide information regarding plaintiff's functional ability as of her December 31, 2001 date last insured, including findings upon which his response was based. (Tr. 546, 644-47, 696.) The record reveals that Dr. Capicotto did not start treating plaintiff in July 2003 which was more than one and one-half years following plaintiff's date last insured. (Tr. 550; 198-200.) The ALJ correctly concluded that Dr. Capicotto never stated that plaintiff was disabled as of her alleged December 21, 2001 onset date except to state that her condition was causally related to her injuries sustained in a motor vehicle accident on that date. However, the record is clear that Dr. Capicotto never opined that plaintiff's disability began on or before July 2003 or December 31, 2001. (Tr. 555.) Thus, the ALJ was under no further obligation to develop the record.

### 3. The ALJ properly assigned some weight to the opinion of Plaintiff's chiropractors

A chiropractor's opinion is not an "acceptable medical source" under 20 C.F.R. 404.1527(a). See Diaz v. Shala, 59 F.3d 307, 313

12

(2d Cir. 1995). While information from a chiropractor cannot establish the existence of a medically determinable impairment, it can be used to provide insight into the severity of Plaintiff's impairment and how it affects Plaintiff's ability to function. SSR 96-03p.

Chiropractor, Dr. Biasallo performed spinal adjustments twice a week from January 7, 2002 to November 11, 2002. (Tr. 183-87). In November of 2003, Dr. Biasillo opined that Plaintiff had the capacity to lift and carry 15 pounds occasionally, sit for less than 6 hours a day, stand for less than 6 hours a day, and push and pull up to 10 pounds with her upper extremities. (Tr. 183-86, 553).

Plaintiff argues that the ALJ failed to properly assess Dr. Biasallo's opinion. (Pl. Mem 22-23). However, based on the frequency that Dr. Biasallo treated and examined Plaintiff, the ALJ granted some weight to his assessment of Plaintiff's RFC. (Tr. 555). Additionally, the ALJ correctly assigned some weight to Dr. Gaiser's opinion. Id.

Plaintiff underwent an independent chiropractic examination on January 28, 2003 by Dr. John N. Gaiser. (Tr. 554). He diagnosed cervicodorsal sprain/strain, and lumbosacral sprain/strain. Id. Dr. Gaiser opined that there was no objective evidence of disability, and that Plaintiff had returned to her pre-accident status (Tr. 471).

I find that the ALJ provided "good reasons" for the weight assigned to each medical source's opinions, and that there is substantial evidence in Plaintiff's medical records to support the

13

ALJ's determination that Plaintiff was not disabled during the relevant period.

**B. The ALJ properly determined that Plaintiff was capable of performing her past relevant work**

The ALJ determined that the Plaintiff retained the RFC to perform light work, which is the ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently. (Tr. 556). Plaintiff argues that the ALJ erred in determining that Plaintiff could perform her past relevant work. (Pl. Mem 7-12).

Plaintiff indicated in one report that her work as a counter clerk required frequent lifting of 50 pounds, while a July 2003 report indicated that 17 pounds were frequently lifted. (Tr. 556). Another inconsistent report stated that both 20 and 50 pounds were the heaviest weight Plaintiff lifted, while an August 2003 report stated that she lifted up to 20 pounds on the job. Id. At the administrative hearing before the ALJ, Plaintiff testified that a 16 pound bowling ball was the heaviest thing she was required to lift, and that she stood or sat during the day. The ALJ determined that Plaintiff's testimony at the hearing was most credible. Relying on this job description, the ALJ correctly determined that Plaintiff retained the ability to perform her past work as a counter clerk. Substantial evidence exists in the record which supports the ALJ's determination that plaintiff is capable of performing light work.

14

**1. Substantial evidence in the record to support the ALJ's determination that Plaintiff's allegation of pain were not entirely credible**

The ALJ opined that Plaintiff's account of her symptoms was not credible in light of her daily activities, and the lack of corroborating objective medical evidence. Plaintiff argues that the ALJ did not take into account Plaintiff's subjective complaints and the side effects of her medications. (Pl. Mem 9).

Plaintiff testified that she was in excruciating pain in her arms, back, and neck on a daily basis. She claimed that since the accident, she laid down three to four times a day, and napped up to two and a half hours per day. She reported that she stopped working in 2003 because she could not get out of bed or turn her neck. She complained that her medication made her feel fatigued. (Tr. 551-52.)

The ALJ found that medical evidence did not support Plaintiff's accounts of the severity of her pain during the relevant period. (Tr. 555-56). Before mid to late 2003, Plaintiff's pain was controlled without significant medical intervention. Id.

If objective medical evidence does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record.[2]

---

[2] The ALJ may consider claimant's subjective complaints in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ found that Plaintiff's symptomatology was not entirely credible in light of her daily activities. (Tr. 555-56). Plaintiff stated that she typically rose at 6:20 a.m. each day, prepared food for her two children, and walked each child to the bus and waited with them. (Tr. 551-52). Plaintiff said that she washed dishes, did laundry, visited friends, prepared meals, helped her children with homework, and shopped with her husband. Plaintiff testified that she took frequent breaks throughout the day. Plaintiff admitted to using cocaine two to three times a week, eight to nine months after the accident until December of 2002 or 2003. She drove around by herself, or accompanied by a friend to obtain the drugs from various people. The ALJ found the ability to perform these activities inconsistent with Plaintiff's allegations that she was severely limited by her impairment. (Tr. 555-56).

## 2. The ALJ properly assessed Plaintiff's testimony that she required frequent breaks

Plaintiff argues that in analyzing her RFC, the ALJ failed to account for her need to take frequent breaks. (Pl. Mem 10-13). Plaintiff argues that the ALJ improperly relied on the possibility of her employer accommodating her impairments.

Plaintiff bore the initial burden of demonstrating that her impairment prevented her from returning to her past work. 20 C.F.R. §§ 404.130, 404.315(a), 404.1512(a). See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). The ALJ found that Plaintiff presented no evidence to support the existence of her need to take frequent breaks during the relevant period.(Tr. 555-56).

In making a determination of whether a claimant retains the ability to work, the ALJ may not take into account the possibility of a job making "reasonable accommodation" for a Plaintiff's impairments. SSR 00-01c. Here, the ALJ concluded that Plaintiff's limitations did not preclude her from performing any of the activities required of a counter clerk in the national economy. (Tr. 556-57). The ALJ did not indicate that Plaintiff would require any additional accommodations to perform her past work. The ALJ noted that Plaintiff's past relevant work is defined as cashier II in the Dictionary of Occupational Titles, #211.462-010, which is listed as light work.

The ALJ compared Plaintiff's RFC with the physical and mental demands of her light work as a counter clerk, and determined that Plaintiff could return to her previous work. I find that there was substantial evidence in the record to support the ALJ's RFC finding that Plaintiff was able to perform her past relevant work.

## CONCLUSION

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings. Plaintiff's cross-motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                    s/Michael A. Telesca
                                    MICHAEL A. TELESCA
                                    United States District Judge

DATED: June 28, 2010
       Rochester, New York